IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL POLICE,<br>　　Plaintiff<br><br>V.<br><br>NAVARRO COLLEGE<br>and OFFICER DAVID ARNETT,<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. _____ |

### PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Michael Police, "Plaintiff", complaining of Navarro County College ("Navarro College") and David Arnett ("Arnett"), sometimes collectively referred to as "Defendants", and in support thereof, would respectfully show the Court the following:

### Parties

1.　Plaintiff is an individual who currently resides in the State of Florida.

2.　Defendant Navarro College is a Texas public college who may be served by delivering a copy of the Summons and of the Complaint to its President, Kevin Fegan, at 3200 W. 7th Avenue, Corsicana, Texas 75110.

3.　Defendant David Arnett is a peace officer with the Navarro College Department of Public Safety and may be served at his residence located at 5825 SE County Rd. 1095, Corsicana, Texas 75109.

### Jurisdiction and Venue

4.　This Court has jurisdiction over the lawsuit because the suit arises under several federal statutes including 42 U.S.C. Section 1983 and seeks redress for violations of rights guaranteed by the Constitution of the United States and therefore presents a federal question. The actions of the

Defendants occurred within the Northern District of Texas and were done under the color of state law and said Defendants were acting within their official capacities.

### Demand for Jury

5. Plaintiff demands a jury on all issues triable to a jury.

### Facts

6. Defendant Navarro College is a two-year public community college with the main of its four campuses located in Corsicana, Navarro County, Texas. On its website, Navarro College states that it is: **"committed to providing a safe and nondiscriminatory employment and educational environment. The College does not discriminate on the basis of race, color, natural origin, sex, disability, religion, age, veteran status, or other status protected by the law in its programs."** Navarro College is known for its nationwide champion caliber of its competitive cheerleading team which in the last few years has been chronicled in the popular Netflix original television series "Cheer." As described herein, in stark contrast to its achievements in cheerleading, Navarro College's concern for its African American male students is anything but laudable and makes a mockery out of its professed ideal as stated above.

7. Defendant Navarro maintains an agency it calls "The Navarro College Department of Public Safety" which pursuant to the College's website states that it employs 14 full-time law enforcement officers that provide "twenty-four -hour patrol and protection of the Corsicana campus." (the "NCDPS"). The NCDPS officers are licensed peace officers and are therefore empowered with all the powers and privileges of Texas Peace Officers. Navarro College represents that the NCDPS is **"dedicated to enhancing the opportunity for students, faculty and staff to participate in the educational experience by providing a safe and orderly environment."** Unfortunately, the facts in this case will demonstrate that Defendant Navarro College has failed

woefully short of its stated racial ideals when it come to the lives of its African American male students. Indeed, this case will establish that Plaintiff, as an African-American male, was racially profiled, harassed, demeaned, and maliciously treated and retaliated against while being deprived of his Constitutional rights and basic decency that all people should be treated with, especially students on a college campus.

8. Plaintiff, Michael Police, is an African American male and at the time giving rise to these events was a nineteen-year-old student living at a dormitory on Defendant Navarro College's campus. On March 28, 2020, in broad daylight, Plaintiff and his friend Drewshard Bell ("Bell"), also a young African America student living on the Navarro College campus in the same dormitory as Plaintiff, were walking down the street and then sitting near an apartment complex located near, but outside of, the Navarro College campus. Plaintiff and Bell were simply talking and doing nothing remotely suspicious, threatening, or dangerous. They were simply two college kids harmlessly talking to each other outside near where they lived and were going to college.

9. Defendant Arnett was is an officer with the NCDPS. On information and belief, Defendant Arnett has a history of targeting and harassing African American male students at Navarro College for accusations, arrests, searches, and/or detentions of alleged criminal conduct. Despite awareness of Defendant Arnett's history, Navarro College has not only retained Defendant Arnett, they have promoted him. For no justifiably rational non-racial reason, after observing Plaintiff and Bell walking down the street and then sitting down at the apartment complex, Defendant Arnett stopped his patrol car (off campus and outside his jurisdiction) and ordered Plaintiff and Bell to walk over towards him. Plaintiff and Bell identified themselves by giving their names and dates of birth. Plaintiff was casually smoking a cigar in full view of Defendant Arnett, and with no attempt to conceal it.

10. Again, for no good faith, reasonable, non-racial profiling or justifiable law enforcement reason whatsoever, Defendant Arnett asked Plaintiff if he could search him after accusing them of smoking marijuana. Bell complained to Defendant Arnett that he sees "white students" walking in that area all of the time and that Defendant Arnett doesn't stop and question them. As a young African American male acutely aware of the rash of recent high profile police killings of unarmed African Americans that quickly escalated from minor encounters, and wanting the encounter to end as quickly as possible, Plaintiff said yes to Defendant Arnett's request to search him. Of course, Plaintiff knew he did not possess anything illegal and he was hoping to satisfy Defendant Arnett so the encounter would end without physical harm or worse.

11. Defendant Arnett searched Plaintiff including by proceeding to touch Plaintiff's person by invasively reaching into the pockets of Plaintiff's thin cloth pants. Among other innocuous items held by a typical nineteen-year old student Defendant Arnett found a clear empty cylinder tube.

12. Defendant Arnett claimed he could smell a faint odor of marijuana emanating from the tube but admittedly did not find any residue in or around the tube. Plaintiff advised Defendant Arnett that the tube was the original package used to store a CBD cigarette and also informed Arnett that it was the type of CBD product one may lawfully purchase that is marketed and sold in the same type of clear plastic tube in stores throughout the State of Texas.

13. Defendant Arnett then turned to Bell and asked Bell "do you mind if I search you?" Bell, replied "yes." This type of answer is common when police officers with little street training ask the question in the negative because it elicits an unclear response from a suspect in terms of consent. Because of the unclear question to obtain consent, Bell predictably denied giving consent after the search was conducted. Bell was arbitrarily placed in handcuffs because Defendant Arnett said "you look nervous."

14. After conducting a search of Plaintiff's and Bell's persons, Defendant Arnett commanded them to accompany him towards the outside stairs of the apartment complex they were sitting before he had ordered them over to his patrol car. Defendant Arnett then searched the area of the stairwell and repeatedly asked Plaintiff and Bell where the marijuana was. Defendant had no basis to suggest they were smoking marijuana. Defendant Arnett continued to badger Plaintiff and Bell at this time without even notifying them of their rights by the use of what is commonly known as a Miranda warning.

15. After a search of the stairwell turned up no marijuana or other contraband, Defendant Arnett asked Plaintiff and Bell if he could search their rooms at their dormitory. Both Plaintiff and Bell denied consent. Despite their refusal to be harassed further causing them to deny consent, Defendant Arnett matter of fact replied, "that's okay, I'm going to search it anyway." Defendant Arnett then demanded Plaintiff and Bell to go to their dormitory rooms where he and the so called health and safety employees would assist Defendant Arnett of a search of their rooms. Defendant Arnett did not obtain a warrant to search the domiciles. Defendant Arnett stated to Plaintiff and Bell that since they had denied consent to search their dormitory rooms, that any contraband or evidence of a crime would not be prosecuted in a criminal court of law but could be used against them in a college administrative punishment proceeding.

16. Defendant Arnett, with the assistance of the two safety and welfare employees, began searching Plaintiff's dormitory room. The entire search is recorded on video from the Officer's body camera. Plaintiff is seated on his bed while the Officer and the two college campus administration officials search throughout Plaintiff's room strewing about Plaintiff's clothes and modest belongings. Defendant Arnett rifled through all of Plaintiff's personal and private possessions in his bedroom and in the bathroom. Gloveless for much of the search, Defendant

Arnett touched and inspected Plaintiff's most private things, including his hygiene products.

17. Throughout the prolonged illegal, humiliating and privacy destroying search, Defendant Arnett continued to interrogate and accuse Plaintiff and asked him repeatedly where the marijuana was located in the dormitory room. Plaintiff continued to vehemently deny having any while having to tolerate the wanton violation of his dignity, his constitutional and basic human rights. Despite Defendant Arnett's insistence that there was marijuana, eventually the search ended and nothing illegal was found, including marijuana.

18. A search of Bell's room was also conducted which, likewise, revealed no marijuana. Defendant Arnett finished up by writing citations for marijuana paraphernalia and issued them to both Plaintiff and Bell. Defendant Arnett can be heard on his body camera repeatedly mocking Plaintiff and Bell for believing that they were being targeted for being African American students.

19. This long, personally violating, and traumatizing day for Plaintiff was just the beginning of a saga that would last approximately two years which is the time that the legal prosecution of the baseless charges against Plaintiff would last. As the case received media attention, the prosecutors dug in their heels and refused to dismiss the charges against Plaintiff, who by this time left Navarro College and transferred to a college in Florida and continued his academics and college football career.

20. Through the tireless and dedicated work of Plaintiff's defense attorney, Ray Hindieh, Plaintiff was recently found not guilty after a jury trial. The jury returned its verdict within minutes, a rare occurrence in a criminal case. This was after two years after the seemingly endless and baseless prosecution of a ticket arising for "paraphernalia" that was a manufacturer's container for a legal cigarette. The prosecutor said privately to Mr. Hindieh that he would have dismissed the case if Mr. Hindieh had "not gotten the media involved."

21. At all material times the Defendant Arnett and others were acting in the course and scope of his employment with Defendant Navarro College.

22. The exercise of established custom of and/or policy by Defendant Navarro College violated Plaintiff's clearly established rights under the U.S. Constitution against the racially profiling, unlawful detention, illegal search and interrogation, baseless criminal prosecution, and physical assault against him.

23. At all times Defendants Arnett and Navarro College were acting under the color of the laws and regulations of the State of Texas. Defendant Navarro College had a policy and/or custom in place that enabled its agents and employees to act with indifference to the constitutional rights of individuals. Such policies and/or customs included tolerating misconduct by police officers and encouraging misconduct by failing to adequately supervise, discipline or train such officers. Such policies and/or customs include the use of excessive force, false arrests and fictitious charges, retaliation against citizens who complain of improper police conduct, racial profiling, discrimination based on race and abuse of proper police and prosecutorial standards. These policies and/or customs give rise to some of the causes of action set forth below.

## Conditions Precedent

24. All conditions precedent have been performed or have occurred.

## Count 1. – Violation of Constitutional Rights

25. Plaintiff incorporates the factual allegations previously set forth in this Complaint. The exercise of the aforementioned policies and/or customs violated Plaintiff's clearly established rights under the United States Constitution against the use of unreasonable, unnecessary, and excessive force pursuant to the Fourth and Fourteenth Amendments of the Constitution. The exercise of such policies and/or procedures also violated such protected rights of Plaintiff against

unreasonable seizure of his person. Plaintiff was first unlawfully detained, interrogated, searched, assaulted, and then charged and maliciously and baselessly prosecuted.

### Count 2. – 42 U.S.C. Section 1983

26. Plaintiff incorporates the factual allegations previously set forth. The Defendants acted willfully, deliberately, maliciously, and/or with reckless disregard for Plaintiff's clearly established constitutional rights as described above. Such actions by Defendants violate 42 U.S.C. Section 1983.

27. As set forth above, Defendant Arnett acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's clearly established constitutional rights in violation of this Statute.

### Count 3 – Malicious Prosecution

28. Plaintiff incorporates the preceding factual allegations contained in this Complaint.

29. The Defendants conduct constitutes malicious prosecution. Defendants caused a prosecution to be commenced against Plaintiff which was ultimately determined in Plaintiff's favor. Plaintiff was innocent of the bogus charges that were maliciously brought to justify Defendant Arnett's unlawful conduct and to intimidate Plaintiff from pursuing action against Defendants. Defendants had no probable cause to initiate a prosecution. Plaintiff suffered injury and damages resulting from the Defendants' wanton and malicious actions.

### Count 4 – Assault and Battery Against Defendant Arnett

30. Plaintiff incorporates the preceding factual allegation contained in the preceding paragraphs of this Complaint.

31. Defendant Arnett's actions against Plaintiff's person constitutes assault and battery. Defendant Arnett acted intentionally, knowingly and/or recklessly touching Plaintiff's body and putting his hands down Plaintiff's pant pockets.

### Count 5 – False Imprisonment Against Defendant Arnett

32. Defendant Arnett's actions against Plaintiff constitute false imprisonment. Defendant Arnett willfully detained Plaintiff without his consent and without legal justification. Defendant Arnett was not acting in good faith in detaining Plaintiff but acted unlawfully and maliciously.

### Count 6 – Intrusion on Seclusion

33. Defendant Arnett intentionally intruded on Plaintiff's solitude and/or private affairs by conducting an illegal search of Plaintiff's residence and going through and examining Plaintiff's personal things and effects. This intrusion would be highly offensive to a reasonable person and caused injury to Plaintiff including mental anguish and emotional distress.

### Damages

34. As a result of the Defendants' actions, Plaintiff has incurred and hereby sues for the following categories of damages:

   a. Actual damages;
   b. Mental anguish in the past and future;

### Attorney Fees

35. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §1988(b).

### Punitive Damages

36. Plaintiff seeks an award of punitive damages.

### Prayer

37. Wherefore, Plaintiff respectfully requests that upon final trial of this cause be awarded:

   a. Actual damages.
   b. Reasonable attorney fees.
   c. Prejudgment and post-judgment interest.
   d. Costs of suit.
   e. Punitive damages
   f. All other relief the court deems appropriate.

Respectfully submitted,

**BERGMANGRAY LLP**

*/s/ Andrew A. Bergman*
Andrew A. Bergman
State Bar No. 02196300
Jay K. Gray
State Bar No. 08324050
4514 Travis Street
Travis Walk, Suite 300
Dallas, Texas 75205
214-528-2444 [Telephone]
214-599-0602 [fax]
gray@bergmangray.com
bergman@bergmangray.com


**LINDSEY MCKAY**
State Bar No. 24064145
430 Church Street
Sulfur Springs, Texas 75482
903-272-1414 [Telephone]
214-272-2162 [fax]
lindsey@mckaylawtx.com

**ATTORNEYS FOR PLAINTIFF**