IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL POLICE,                          §
                                         §
            Plaintiff,                   §
                                         §
v.                                       §        Civil Action No. 3:22-cv-00712-E
                                         §
NAVARRO COLLEGE and                      §
OFFICER DAVID ARNETT.                    §
                                         §
            Defendants.                  §

# Order and Memorandum Opinion

Plaintiff Michael Police filed this suit against Defendant Navarro College and Defendant Officer David Arnett of the Navarro College Department of Public Safety. Plaintiff asserts against both Defendant Officer David Arnett and Defendant Navarro College: (1) various claims under Texas state law; and (2) a claim under 42 U.S.C. § 1983 for the alleged violation of his constitutional rights. Both defendants moved to dismiss the claims against them under Rule 12(b)(6). (Doc. 12; Doc. 13). On March 31, 2023, the Court issued a separate Order, (Doc. 28), that: (1) granted in part and denied in part Defendant David Arnett's Motion to Dismiss Plaintiff's Original Complaint, (Doc. 12); and (2) granted Defendant Navarro College's Motion to Dismiss Plaintiff's Original Complaint. The Order stated that "[a]n opinion containing the grounds for the Court's decision is forthcoming." (Doc. 28). Hereunder, the Court explains its reasoning for the Court's decision.

## I.    Background

This action arises out of an interaction between Plaintiff Michael Police ("Plaintiff") and David Arnett ("Arnett")—an officer with the Navarro College Department of Public Safety ("NCDPS"). The following facts are alleged in Plaintiff's Original Complaint (the "Complaint"), (Doc. 1), and, at this stage, must be accepted by the Court as true.[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in [a] complaint as true[.]") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, at 555 (2007)).

On March 28, 2020, Plaintiff, an African-American male, was a nineteen-year-old student living in a dormitory on the campus of Navarro College in Corsicana, Texas. As alleged on that day, Plaintiff and his friend Drewshard Bell ("Bell"), also an African-American male, walked down a street and then sat outside of an apartment complex outside of the College. The apartment complex was near the College. Plaintiff was smoking a cigar when Arnett stopped his patrol car and allegedly "ordered" Plaintiff and Bell to walk towards his car. Plaintiff alleges that, based on "information and belief, Defendant Arnett has a history of targeting African-American male students at Navarro College[,]" and—despite "awareness of Defendant Arnett's history"—the college has not only retained Arnett but promoted him. (Doc. 1, pg. 3, ¶ 9).

Plaintiff and Bell walked from the apartment complex stairwell to Arnett's car and identified themselves by giving their names and dates of birth. "Plaintiff was casually smoking a cigar in full view of Arnett, [making] no attempt to conceal it." (Doc. 1, pg. 3, ¶ 9). Arnett "asked Plaintiff if he could search him after accusing [Plaintiff and Bell] of smoking marijuana." (Doc. 1,

---

[1] In deciding both Arnett's and the College's motions to dismiss under Rule 12(b)(6), the Court construes the Original Complaint in the light most favorable to Plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

pg. 4, ¶ 10). Plaintiff acknowledges in his Complaint that he consented to the search. (Doc. 1, pg. 4, ¶ 10). Arnett searched Plaintiff's person by patting him down and reaching into his pockets. In one of Plaintiff's pant pockets, Arnett found a "clear empty cylinder tube." (Doc. 1, pg. 4, ¶ 11). Arnett told Plaintiff and Bell that "he could smell a faint odor of marijuana emanating from the tube," but Arnett did not find any marijuana residue in or around the tube. (Doc. 1, pg. 4, ¶ 12). Plaintiff told Arnett that the tube was the packaging for a "CBD cigarette," which may be legally marketed, sold, and purchased in the State of Texas.

Arnett then asked Bell, "Do you mind if a search you?" (Doc. 1, pg. 4, ¶ 13). Bell responded, "Yes." (Doc. 1, pg. 4, ¶ 13). Arnett searched Bell, but Bell denied giving consent after the search was completed. Arnett then handcuffed Bell, saying that Bell "looked nervous." (Doc. 1, pg. 4, ¶ 13). Arnett then, according to the Complaint, "commanded" Plaintiff and Bell to accompany Arnett to the outdoor stairwell of the apartment complex, where Plaintiff and Bell had been originally seated. (Doc. 1., pg. 5, ¶ 14). Arnett searched the stairwell area for marijuana and repeatedly asked the two students where the marijuana was. The search of the area around the stairwell turned up no marijuana or evidence of criminal activity whatsoever.

After finding no marijuana or other contraband in the area around the stairwell, Arnett asked Plaintiff and Bell whether he could search their dormitory rooms on the College campus. Both students declined to give consent to a search of their respective College dormitories. Arnett, the Complaint alleges, responded by telling the students, "That's okay, I'm going to search [them] anyway." (Doc. 1, pg. 5, ¶ 15). Arnett then, according to Plaintiff's Complaint, "demanded" that both Plaintiff and Bell accompany Arnett to their College dormitory rooms, where he conducted a search of each student's dormitory room with two other safety and welfare College employees. (Doc. 1, pg. 5, ¶ 16). Arnett did not obtain a warrant for the search of the dormitories. Before

conducting the search of Plaintiff's dormitory room, according to the Complaint, Arnett "stated to Plaintiff and Bell that since they had denied consent to search their dormitory rooms, that any contraband or evidence of a crime would not be prosecuted in a criminal court of law but could be used against them in a college administrative punishment proceeding." (Doc. 1, pg. 5, ¶ 15).

Plaintiff was present in his College dormitory during the search. Arnett continued to ask Plaintiff where the marijuana was located, and Plaintiff continued to deny having any marijuana in his dormitory room. The search of Plaintiff's dormitory room revealed no marijuana or contraband. The search of Bell's dormitory also revealed no marijuana or contraband. Arnett wrote and issued both Plaintiff and Bell citations for possession of marijuana paraphernalia based on the cylindrical tube Arnett found on Plaintiff's person. Local prosecutors took the charges against Plaintiff to trial, and Plaintiff was eventually acquitted.

On March 3, 2022, Plaintiff filed suit against both Arnett and the College. (Doc. 1). Plaintiff's Complaint asserts the following claims against Arnett: (1) a state-law claim for malicious prosecution; (2) a state-law claim for both assault and battery; (3) a state-law claim for false imprisonment; (4) a state-law claim for intrusion on seclusion; and (5) a federal-law claim for the alleged violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983. The Complaint also asserts the following claims against the College: (1) a state-law claim for malicious prosecution; and (2) a federal-law for governmental liability for the alleged violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983.

On May 5, 2022, Arnett filed his Motion to Dismiss Plaintiff's Original Complaint ("Arnett's Motion"), asserting a defense of qualified immunity. (Doc. 12). On May 6, 2022, the College filed its Motion to Dismiss Plaintiff's Original Complaint ("the College's Motion"). (Doc. 13). Both motions have been fully briefed and are ripe for consideration. For the reasons discussed

below, the Court partially grants and partially denies Arnett's Motion and grants the entirety of College's Motion.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

### III.   ANALYSIS

**A.    Defendant Arnett's Motion to Dismiss Is Granted in Part and Denied in Part**

For the reasons discussed below, the Court grants in part and denies in part Arnett's Motion. (Doc. 12). Specifically, the Court grants in part the motion with respect to Plaintiff's state-law claims against Arnett and dismisses those claims with prejudice. However, the Court denies in part the motion with respect to Plaintiff's § 1983 claims against Arnett based on the alleged violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

*1.    State-Law Claims*

In his Original Complaint, Plaintiff asserts the following state-law claims against Arnett: (1) malicious prosecution; (2) assault and battery; (3) false imprisonment; and (4) intrusion on seclusion. (*see* Doc. 1, pgs. 8-9, ¶¶ 28-33). In his motion to dismiss, Arnett argues that these claims are barred by § 101.106 of the Texas Tort Claims Act ("TTCA"). (Doc. 12, pgs. 9-11). "The [TTCA] provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Section 101.106 of the TTCA—entitled "Election of Remedies"—requires plaintiffs, at the time a suit is filed, to decide whether they are going to sue a governmental unit or the governmental employee who allegedly committed the tortious act. *Id*. at 656. Section 101.106(f) states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. *On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.*

TEX. CIV. PRAC. & REM. CODE § 101.106(f) (emphasis added).

In response, Plaintiff abandoned the state-law claims against Arnett, stating that the "state[-]law causes of action . . . will not be pursued against Defendant Arnett[.]" (Doc. 19, pg. 15). Plaintiff also stated that he would "timely amend his Complaint and name only Defendant Navarro College on any or all such causes of action." (Doc. 19, pg. 15). Arnett filed his motion to dismiss on May 5, 2022. (Doc. 12). As of the issuance of this order and memorandum opinion, Plaintiff has not amended his Original Complaint. Because Plaintiff has affirmatively abandoned his state-law claims against Arnett, the Court **GRANTS IN PART** Arnett's Motion with respect to those state-law claims and dismisses them with prejudice. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims."); *see Kovac v. Wray*, 363 F. Supp. 3d 721, 747 (N.D. Tex. 2019) ("When a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived.").

2.    *Section 1983 Claims*

Plaintiff alleges that Arnett "acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's clearly established constitutional rights" in violation of 42 U.S.C. § 1983. (Doc. 1, pg. 8, ¶ 27). The Complaint alleges: (1) excessive force stemming from Arnett's search of Plaintiff's person; (2) malicious prosecution; (3) unreasonable seizure in the form of illegal detention stemming from Arnett's stopping Plaintiff and Bell; (4) unreasonable search of both Plaintiff's person and dormitory. (Doc. 1, pg. 8, ¶ 27). In his motion to dismiss, Arnett raises the affirmative defense of qualified immunity. (Doc. 12, pgs. 7-9).

To state a claim under § 1983, plaintiffs must allege: (1) "some person has deprived [them] of a federal right" guaranteed by the United States Constitution or federal law; and (2) "the person

who deprived [them] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). While § 1983 claims "implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims[,]" the doctrine of qualified immunity does "add[] a wrinkle to § 1983 pleadings when [it] is relevant." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citations omitted). "Qualified immunity gives government officials breathing room to make reasonable[,] but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (internal quotation marks omitted). The Fifth Circuit has explained that:

> [B]ecause qualified immunity is "not simply immunity from monetary liability" but also "immunity from having to stand trial," there is an interest in qualified immunity entering a lawsuit "at the earliest possible stage of litigation." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).
>
> This immunity-from-suit interest does not require that the plaintiff's original complaint exceed the short-and-plain-statement standard of Rule 8. [*Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016)]. Rather, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both [(1)] allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and [(2)] that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). That is, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*.

*Arnold*, 979 F.3d at 267.

Thus, to overcome a defense of qualified immunity, a complaint must allege facts that—if true—establish that: (1) an official's conduct violated a statutory or constitutional right of the plaintiff; and (2) the right was "clearly established" at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). The second step of the qualified immunity analysis "turns on the 'objective legal reasonableness'

of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The two steps of the qualified immunity inquiry may be performed in any order. *Pearson*, 555 U.S. at 236. "A court may rest its analysis on either prong," *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citation omitted).

As an initial matter, Plaintiff has satisfied the "under color of law" element of his § 1983 claim. He alleges that, at all relevant times, "Defendant[] Arnett . . . [was] acting under the color of the laws and regulations of the State of Texas." (Doc. 1, pg. 7, ¶ 23). Thus, the Court must consider whether Plaintiff has (1) plausibly alleged that Arnett violated Plaintiff's constitutional rights and (2) alleged sufficient facts to defeat Arnett's defense of qualified immunity.

Two of Plaintiff's four constitutional claims should be dismissed. First, Plaintiff has affirmatively abandoned his excessive force claim against Arnett in his corresponding response. (Doc. 19, pg. 10) ("Plaintiff does not intend to pursue his claim his claim for excessive force."). Plaintiff has also abandoned his malicious prosecution claim insofar as he makes no mention of it in his response despite Arnett specifically addressing it in his motion to dismiss. *See In re Dallas Roadster*, Ltd., 846 F.3d 112, 126 (5th Cir. 2017) (finding that plaintiff abandoned his malicious civil prosecution claim where he failed to respond to defendant's arguments in motion to dismiss); *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff's failure to defend her retaliatory abandonment claim in response to defendant's motion to dismiss "constituted abandonment"). Moreover, even if Plaintiff had addressed the malicious prosecution claim in his response, the Court would be compelled to conclude that Plaintiff has not stated a viable claim under 42 U.S.C. § 1983 because—as the Fifth Circuit has repeatedly explained— "there is no free standing right under the Constitution to be free from malicious prosecution."

*Arnold*, 979 F.3d at 270 (citing *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020)).[2] "Rather, facts amounting to malicious prosecution are properly alleged as part of an actual Fourth Amendment claim, such as unreasonable search or seizure." *Id.*

Nevertheless, Plaintiff maintains his claims of unreasonable seizure and unreasonable search in his response to Arnett's Motion. (Doc., 19, pgs. 10-14). Hereunder, the Court addresses each of these claims in the context of the alleged Fourth Amendment constitutional violations—considering: (1) the initial stop of Plaintiff; (2) the initial search of Plaintiff's person; (3) the search of the apartment complex area; and (4) the search of the College dormitory.

    (i)    <u>Arnett's Motion to Dismiss is Denied with Respect to Plaintiff's Unreasonable Seizure Claim</u>

The Court now considers whether Plaintiff has adequately alleged a claim under 42 U.S.C. § 1983 for the violation of his Fourth Amendment right to be free from unreasonable seizure. For the reasons discussed below, the Court concludes that: (1) Plaintiff has, in part, sufficiently alleged that Arnett violated Plaintiff's constitutional right to be free from unreasonable seizures in the form of an illegal detention; and (2) Plaintiff has alleged sufficient facts to defeat Arnett's defense of qualified immunity. Thus, Arnett's Motion to Dismiss Plaintiff's Original Complaint, (Doc. 12), is **DENIED IN PART** with respect to Plaintiff's unreasonable seizure claim.

    **(a)**    **Whether Any Constitutional Violation Occurred**

The Fourth Amendment provides that "the right of people to be secure in the persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "[T]he Supreme Court has recognized three distinct levels or tiers of police-citizen contact within the context of the [F]ourth [A]mendment." *United States v. Hanson*, 801

---

[2] *See also Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) ("[T]he federal Constitution does not include a "freestanding" right to be free from malicious prosecution."); *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc) ("No . . . freestanding constitutional right to be free from malicious prosecution exists.").

F.2d 757, 760-61 (5th Cir. 1986). First, is mere "communication between police and citizens involving no coercion or detention and therefore [outside the scope of] the Fourth Amendment[.]" *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. Unit B 1982). Second, is an investigative detention—also known as a *Terry* stop—in which "[a]n officer may, consistent with the Fourth Amendment, temporarily detain a person when the officer has a reasonable, articulable suspicion that a person has committed or is about to commit a crime." *United States. v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2022) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014 (quoting *United States v. Zukas*, 843 F.2d 179, 181 (5th Cir. 1988)). "Finally, the third tier is a full-scale arrest which must be supported by probable cause." *Massi*, 761 F.3d at 520. (citing *Zukas*, 843 F.2d at 181-82) (citations and internal quotation marks omitted) (alterations incorporated). "This three-tiered approach presents . . . court[s] with two questions: when [was] the [person] 'seized' and which tier does that seizure occupy?" *Hanson*, 801 F.2d at 761. "A seizure has occurred if 'in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

For the reasons discussed below, the Court concludes: (1) a *Terry* stop occurred when Arnett handcuffed Bell and commanded Plaintiff and Bell to accompany him to the apartment stairwell; (2) Arnett had reasonable suspicion to support initiating the *Terry* stop; but (3) the stop was nevertheless unreasonable as alleged because it exceeded the scope of the circumstances justifying its initiation in the first place.

### (1) Whether a Seizure Occurred

The Court first assesses Plaintiff's contention that Arnett's "initial police action" of requesting Plaintiff and Bell approach his patrol car was unreasonable seizure. (Doc. 19, pg. 10).

Plaintiff's argument regarding the initial encounter is two-fold. First, Plaintiff argues that Arnett's action of "pulling up in a marked police vehicle and immediately demanding Plaintiff and Bell . . . stop what they were doing and come to his presence" constituted an investigatory stop under the Fourth Amendment. (Doc. 19, pg. 10). Second, Plaintiff argues the investigative stop was unreasonable because "Arnett did not have reasonable suspicion that a crime was being committed." (Doc. 19, pg. 10). The Court concludes the allegations contained in the Complaint about this initial encounter—taken as true—do not state a claim for the violation of Plaintiff's constitutional rights because the encounter—as alleged—did not amount to a *Terry* stop.

As noted above, the first tier of police-citizen contact is "mere communications between a citizen and an officer, involving no element of detention or coercion[,]" which does not implicate the Fourth Amendment. *Hanson*, 801 F.2d at 761 (citing *Terry*, 392 U.S. at 19, n. 16). The Supreme Court has stated that its "cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). An "encounter is consensual and no reasonable suspicion is required" so long as "a reasonable person would feel free 'to disregard the police and go about his business[.]'" *Id.* (quoting *California v. Hodari*, 499 U.S. 621, 628 (1991)). "Only when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [courts] conclude that a 'seizure' has occurred." *Terry*, 392 U.S. at 19, n. 16; *see e.g.*, *Florida v. Royer*, 460 U.S. 491 (1983) (plurality opinion) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen").

Plaintiff does not plead any facts demonstrating that Arnett's initial act of calling Plaintiff and Bell over to his patrol car constituted a *Terry* stop. The Complaint states that Arnett "stopped his patrol car . . . and ordered Plaintiff and Bell to walk over towards him." (Doc. 1, pg. 3, ¶ 9). Plaintiff voluntarily walked toward the patrol car and voluntarily gave Arnett his name and date of birth. At this stage of the interaction, Plaintiff does not allege that Arnett used coercion, physical force, or any show of authority, other than Plaintiff's allegation that Arnett "ordered" Plaintiff and Bell to walk towards Arnett. Plaintiff does not allege that, during this portion of the interaction, he (1) did not feel free to disregard Arnett and go about his business or (2) felt as though he was restrained in some way. Under these circumstances, the Court concludes that a reasonable person would have felt free to terminate the encounter and, thus, Plaintiff has not alleged that this initial encounter was an illegal *Terry* stop unsupported by reasonable suspicion. *See Bostick*, 501 U.S. at 434 ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."); *see also United States v. Wolfe*, 983 F.2d 232 (5th Cir. 1993) (concluding that no *Terry* stop occurred when police officer stopped his patrol car, backed it up to see what was going on, yelled questions to five men as they waked across the street, and gave no indication that they were not free to leave).

The Court next considers whether an unreasonable seizure occurred when Arnett handcuffed Bell and allegedly "commanded" Plaintiff and Bell to accompany Arnett to the outdoor apartment stairwell at which they were initially seated. By this point, Plaintiff had consented to a search of his person while standing next to Arnett's patrol car. It is uncontested that Arnett found a cylindrical container in Plaintiff's pocket, which Arnett claimed smelled of marijuana. Arnett then asked Bell if he consented to being searched. After an allege miscommunication,[3] Arnett

---

[3] Plaintiff alleges that Arnett asked this question in the negative to elicit an unclear response. (Doc. 1, pg. 4, ¶ 13).

searched and handcuffed Bell, stating that "he looked nervous." Plaintiff does not allege that Arnett ever placed him in handcuffs. Arnett then, according to the Complaint, demanded the two young men accompany him to the outdoor stairwell at which they were originally sitting while Arnett searched the area surrounding the stairwell for marijuana.

The Court concludes that, based on the well-plead facts in the Complaint, Plaintiff has alleged a *Terry* stop occurred when Arnett handcuffed Bell and commanded Plaintiff and Bell to move from next to the patrol car to the stairwell. In determining whether a police-citizen encounter constitutes a *Terry* stop, courts must determine whether a seizure has occurred in light of *Bostick* and *Terry*. Taking as true the well-pled facts in the Complaint, the Court concludes that, while Plaintiff was not himself handcuffed, a reasonable person in Plaintiff's position would have believed he was not free to leave after Arnett handcuffed Bell and commanded that Plaintiff and Bell relocate themselves so that Arnett could conduct a search of the area around the apartment complex stairwell. *See Bostick*, 501 U.S. at 434. Thus, the Court concludes Plaintiff has adequately alleged that a seizure occurred under the Fourth Amendment.

### (2)   *Whether the Seizure Was Legal*

Having concluded that Arnett initiated a *Terry* stop once he handcuffed Bell and ordered Bell and Plaintiff to relocate to the stairwell, the Court must next assess the legality of the investigative stop. Such an analysis is two-pronged. *United States v. Pack*, 612 F.3d 341, 349-50 (5th Cir. 2010). First, the Court considers whether Arnett's "decision to make the stop was justified at its inception." *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021) (citing *Pack*, 612 F.3d at 350). Second, the Court considers whether Arnett's "subsequent actions were reasonably related in scope to the circumstances that caused him to [initiate the *Terry* stop] in the first place." *Id.* (citing *Pack*, 612 F.3d at 350). For the reasons discussed below, the Court concludes: (1) Arnett

---

MEMORANDUM OPINION AND ORDER                                        Page **14** of **47**

was justified in initiating a *Terry* stop in the first place; but (2) Arnett's subsequent actions were not reasonably related to the circumstances justifying the stop because Arnett extended the Plaintiff's detention beyond its initial purpose and without additional reasonable suspicion.

First, the well-pled facts in the Complaint support the conclusion that Arnett was justified in initiating the *Terry* stop. A *Terry* stop must be supported by reasonable suspicion, which "has been described as a particularized and objective basis for suspecting the person stopped of criminal activity." *Chavez*, 281 F.3d at 485 (internal quotation marks omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000). "Reasonable suspicion exists when the detaining officer can point to specific facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." *United States. v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) (citing *United States v. Santiago*, 310 F.3d 336, 338-39 (5th Cir. 2002)). The determination of whether reasonable suspicion exists to justify an investigatory detention "must be based on the totality of the circumstances and the collective knowledge and experience of the officer[.]" *Id.* (citing *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000)).

The Court concludes, based on the well-pled facts in Plaintiff's Complaint, Arnett had reasonable suspicion of criminal activity when Arnett initiated the *Terry* stop. Arnett's search of Plaintiff's person resulted in Arnett finding a clear cylindrical tube that Arnett claimed smelled of marijuana. Plaintiff alleges Arnett did not find any residue in or around the tube; Plaintiff also alleges he informed Arnett that the tube was the original package for a legal CBD cigarette. Nonetheless, the Court concludes Arnett's ability to smell what Arnett perceived to be the odor

---

MEMORANDUM OPINION AND ORDER                                    Page **15** of 47

marijuana emanating from the tube found on Plaintiff's person provided the basis for a reasonable suspicion that Plaintiff had engaged in criminal activity—namely, the criminal possession of marijuana, and/or possession of drug paraphernalia, both of which are crimes in Texas. *See* TEX. HEALTH & SAFETY CODE §§ 481.121 (possession of marijuana), 481.125 (possession of drug paraphernalia); *see also United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1988) (smell of burnt marijuana alone justified the warrantless search of a vehicle).[4] Thus, the Court concludes that— taking the well-pled facts as true—Arnett was justified in initiating the *Terry* stop.

Next, the Court considers whether Arnett's subsequent actions were reasonably related in scope to the circumstances justifying the investigative detention. In evaluating an officer's subsequent actions after the initiation of a *Terry* stop, courts must evaluate whether "both the scope and the length of the officer's investigation [was] reasonable in light of the facts articulated as having created the reasonable suspicion of criminal activity." *Pack*, 612 F.3d at 357. "[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005). The Court considers the reasonableness of Arnett's subsequent actions in two parts: (1) Arnett's search of the area around the stairwell at which Plaintiff and Bell were originally seated; and (2) Arnett's alleged demand that Plaintiff and Bell accompany Arnett to Plaintiff and Bell's dormitory rooms after the stairwell search turned up no evidence of criminal activity.

---

[4] *See United States v. Villareal*, 565 F.2d 932, 937 (5th Cir. 1978) (smell of marijuana furnished officer with probable cause to search the trunk of a vehicle); *Bazan v. Whitfield*, 754 F. App'x 280, 281 (5th Cir. 1978) (smell of marijuana provided sufficient probable cause to justify warrantless search of a vehicle); *United States v. Alberti*, No. 3:14-cr-0007-L, 2014 WL 2159259, at *7 (N.D. Tex. May 23, 2014) (smell of marijuana from a vehicle gave officers, at minimum, reasonable suspicion to support investigatory stop).

The Court concludes Arnett's initial actions after moving Plaintiff and Bell to the stairwell was reasonably related to his reasonable suspicion that the two young men either were or had been in possession of marijuana and/or drug paraphernalia. Here, Arnett allegedly ordered both Plaintiff and Bell accompany Arnett to the apartment stairwell where they were initially seated. According to the Complaint, Arnett "searched the area of the stairwell and repeatedly asked Plaintiff and Bell where the marijuana was." (Doc. 1, pg. 5, ¶ 14). Arnett's search of the area surrounding the apartment stairwell turned up neither marijuana nor other contraband. Nevertheless, Arnett's actions in searching the apartment stairwell were reasonably related to the circumstances justifying the *Terry* stop. That is, Arnett believed Plaintiff and Bell either were or had recently been in physical possession of marijuana and/or drug paraphernalia; therefore, Arnett's search of Plaintiff and Bell's persons as well as Arnett's search of the area in which they had been sitting for evidence to confirm his suspicion that a crime had been committed was proper. Thus, the Court concludes Arnett's acts relating to the stairwell portion of the interaction was not unreasonable.

However, the Court nonetheless concludes—in light of the facts alleged in Plaintiff's Complaint—Plaintiff has adequately alleged Arnett violated Plaintiff's right to be free from unreasonable seizure when Arnett extended Plaintiff's detention without additional, articulable reasonable suspicion. With respect to whether an officer's actions following a legitimate *Terry* stop are reasonable, the Fifth Circuit has explained that:

> [W]e require that an officer's actions after a legitimate stop be "reasonably related to the circumstances that justified the stop, or to dispel[] his reasonable suspicion [that] developed during the stop." [*United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)]. A reasonable detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.*

*Johnson v. Thibodaux City*, 887 F.3d 726, 734 (5th Cir. 2018) (second and third alteration in original). While "[t]here is no 'constitutional stopwatch' on investigatory stops[,]" the Court

"must assess whether [Arnett] 'diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly.'" *Bass*, 995 F.3d at 738 (quoting *Brigham*, 382 F.3d at 511). The Court concludes Plaintiff has stated a plausible claim for unreasonable seizure because the well-pled facts indicate Arnett: (1) detained Plaintiff for longer that was necessary to confirm or dispel his suspicion that Plaintiff was or had been in possession of marijuana and/or possession of drug paraphernalia; and (2) extended Plaintiff's detention without additional reasonable suspicion.

It is undisputed the stairwell search did not turn up any evidence of a crime. Thus, once Arnett completed the stairwell search, the "purpose of the stop"—to confirm or obtain evidence of a crime relating to possession of marijuana and/or drug paraphernalia—was completed. *Royer*, 460 U.S. at 500. At that point, the reasonable suspicion justifying Arnett's initiation of a *Terry* stop was dispelled. Yet, Arnett extended his detention of Plaintiff. As noted above, a seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" *Terry*, 392 U.S. at 19, n. 16. Based on the well-pled facts in the Complaint, the Court concludes Arnett continued his detention of Plaintiff by a show of authority when he (1) told Plaintiff that he would search Plaintiff's dormitory even though Plaintiff did not give his consent to do so and (2) "demanded" that Plaintiff accompany Arnett to Plaintiff's dormitory so Arnett could conduct further investigation. The Court concludes that, based on the facts alleged, Arnett had no legal justification to detain Plaintiff longer than Arnett already had.

The Supreme Court has explained that "a person may not be detained ***even momentarily*** without reasonable, objective grounds for doing so." *Royer*, 460 U.S. at 498 (emphasis added). For Arnett to continue Plaintiff's detention, additional reasonable suspicion—supported by articulable facts—would have had to emerged during the stairwell search. *Brigham*, 382 F.3d at 506; *see also*

*Lopez-Moreno*, 420 F.3d at 431. Based on the well-pled facts in the Complaint, the stairwell search did not turn up any objective grounds for Arnett's further detention of Plaintiff to see if Plaintiff had marijuana and/or drug paraphernalia in his dormitory. Thus, Arnett's continued detention of Plaintiff by ordering Plaintiff to accompany Arnett to Plaintiff's dormitory was not supported by any additional reasonable suspicion. Consequentially, the Court concludes Plaintiff has alleged sufficient facts in his Complaint to support the reasonable inference that Arnett's continued detention of Plaintiff was unreasonable under the Fourth Amendment. *See Johnson*, 887 F.3d at 734 (an investigative detention that "lasted longer than necessary to effect the purpose of the stop" was unlawful); *United States v. Valdez*, 267 F.3d 395, 398 (5th Cir. 2001) ("[O]nce an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion."); *Emesowem v. Cruz*, 756 F. App'x 374, 379 (5th Cir. 2018) (detaining plaintiff handcuffed in the back of a squad car believing plaintiff was attempting to burglarize a car despite law enforcement knowing the car belonged to plaintiff was unreasonable under the Fourth Amendment).

In sum, the Court concludes Plaintiff has adequately alleged that Arnett violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures in the form of illegal detention. Plaintiff has adequately alleged Arnett initiated an investigatory detention of Plaintiff when Arnett handcuffed Bell and ordered the two young men to relocate from next to the patrol car to the stairwell. Arnett had reasonable suspicion to justify initiating this detention, and Arnett's initial act of searching the stairwell area was reasonably related to that originally reasonable suspicion. However, the well-pled facts in the Complaint indicate that Arnett's detention of Plaintiff lasted longer than was necessary to effectuate its original purpose—to determine whether Plaintiff was or recently had been in possession of marijuana and/or drug paraphernalia. *See Johnson*, 887 F.3d

at 734. Once Arnett found no evidence of either possession of marijuana or drug paraphernalia in the stairwell area, his initially reasonable suspicion was dispelled, and his detention of Plaintiff should have ended. *See Valdez*, 267 F.3d at 398. However, Plaintiff has adequately alleged that Arnett continued Plaintiff's detention despite lacking additional reasonable suspicion to do so. *See Lopez-Moreno*, 420 F.3d at 431. Thus, taking as true the facts alleged in the Complaint, Plaintiff has plausibly alleged that Arnett violated the Fourth Amendment right to be free from unreasonable seizures.

### (b)     Whether a Violation of Clearly Established Law Occurred

Having determined that Plaintiff has adequately pled his unreasonable seizure claim to survive a Rule 12(b)(6) challenge, the Court must next determine whether Arnett's conduct—as alleged in the Complaint—violated a constitutional right that clearly established at the time of the incident. *Saucier*, 533 U.S. at 200-01. In its unpublished but persuasive opinion in *Emesowum v. Cruz*, the Fifth Circuit explained:

> It was clearly established at the time of this incident that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319; *see also Turner v. Lieutenant Driver*, 848 F.3d 678, 693–95 (5th Cir. 2017) (reversing grant of motion to dismiss on qualified immunity grounds where detention amounted to warrantless arrest); *Freeman v. Gore*, 483 F.3d 404, 413–14 (5th Cir. 2007) (affirming denial of summary judgment based on qualified immunity in § 1983 suit for unlawful arrest); [*Brigham*, 382 F.3d at 510] (collecting cases holding that continued questioning when "there remained no reasonable suspicion of wrongdoing" unconstitutionally prolonged detentions).

756 F. App'x at 379.[5] While the Fifth Circuit's opinion in *Emesowum* is not itself controlling precedent, each of the decisions the Fifth Circuit cited in support of its conclusion that the officer in *Emesowum* violated plaintiff's clearly established rights are published opinions and therefore

---

[5] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4).

constitute controlling precedent that place the instant "constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Plaintiff alleges Arnett "acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's clearly established constitutional rights," including the right to be free from the unreasonable seizure of his person. (Doc. 1, pgs. 7-8, ¶ 25-27). Based on the facts alleged, the Court concludes Plaintiff has pled facts with sufficient specificity to "defeat a qualified immunity defense." *Backe*, 691 F.3d at 648. When Arnett ordered Plaintiff to accompany Arnett to Plaintiff's dormitory on the College campus, no reasonable officer could have concluded that the Fourth Amendment permitted such a continued detention of Plaintiff—because Arnett's reasonable suspicion of a crime (that Plaintiff was or had been in possession of marijuana and/or drug paraphernalia) had already been dispelled. *See Valdez*, 267 F.3d at 398 (detention became unlawful once suspicion was dispelled); *see also Emesowum*, 756 F. App'x at 379-80 (detention became unlawful after officer uncovered evidence plaintiff owned the car the officer had previously believed plaintiff was attempting to burgle). Accordingly, Plaintiff has adequately pled facts allowing the Court to draw the reasonable inference that not only that Arnett is liable for the conduct alleged but also that Plaintiff can defeat Arnett's defense of qualified immunity. *See Backe*, 691 F.3d at 648. As such, Arnett's Motion to Dismiss Plaintiff's Original Complaint, (Doc. 12), is **DENIED IN PART** with respect to Plaintiff's claim under 42 U.S.C. § 1983 that Arnett violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure in the form of illegal detention.

        (ii)    <u>Arnett's Motion to Dismiss is Denied in Part with Respect to Plaintiff's Unreasonable Search Claim</u>

---

The Court next considers whether Plaintiff has adequately alleged a claim under 42 U.S.C. § 1983 for the violation of his Fourth Amendment right to be free from unreasonable searches. For the reasons discussed below, the Court concludes Plaintiff has, in part, alleged an unreasonable search claim. Thus, Arnett's Motion to Dismiss Plaintiff's Complaint, (Doc. 12), is **DENIED IN PART** with respect to Plaintiff's unreasonable search claim.

### (a)        Whether Any Constitutional Violation Occurred

"The Fourth Amendment provides in relevant part that the 'right of the people to be secure in their persons, their houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting U.S. CONST. amend. IV). "Simply put, warrantless searches are per se unreasonable, and therefore unconstitutional, unless they fall into one of the few specifically established and well-defined exceptions to the general rule." *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Thus, warrantless searches violate the Fourth Amendment unless "they fall within a specific exception to the warrant requirement." *Bass*, 996 F.3d at 738. Plaintiff bases his unreasonable search claim on: (1) Arnett's search of Plaintiff's person after Arnett called him over to the squad car; and (2) Arnett's search of Plaintiff's dormitory. (*see* Doc. 1, pgs. 3-4, ¶¶ 8-11; Doc. 1, pgs. 5-6, ¶¶ 15-16). For the reasons discussed below, Plaintiff has partly, adequately alleged that Arnett violated his Fourth Amendment right to be free from unreasonable searches.

### (1)     Search of Plaintiff's Person

The Court first considers whether Plaintiff stated an unreasonable search claim based on Arnett's search of Plaintiff's person. Based on the well-plead facts in the Complaint, Plaintiff failed to allege that Arnett's search of his person violated Plaintiff's Fourth Amendment rights. "[O]ne of the specifically established exceptions to the requirements of both a warrant and

probable cause is a search that is conducted pursuant to consent." *Schneckloth*, 412 U.S. at 219. However, consent to a warrantless search must be validly given. *See United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006). "To determine whether consent was validly given, [courts] ask[:] (1) whether consent was voluntary[;] and (2) whether it was an independent act of free will." *Id.* (citing *Santiago*, 310 F.3d at 342).

Plaintiff admits in his Complaint that he consented to the search of his person. Plaintiff alleges however, Plaintiff consented to the search because, "[a]s a young African American male acutely aware of the rash of recent high profile police killings of unarmed African Americans that quickly escalated from minor encounters[,]" he wanted "the encounter to end as quickly as possible[.]" (Doc. 1, pg. 4, ¶ 10). Plaintiff makes the conclusory argument—without citation to any underlying facts—that Arnett unlawfully "parlayed" his "intimidation power" into "obtaining the 'consent' of Plaintiff to search his person." (Doc. 19, pg. 11). Plaintiff also appears to argue that the search of his person constituted an unconstitutional *Terry* pat down. (Doc. 19, pg. 11). In reply, Arnett argues that Plaintiff's consent was validly given because: (1) Plaintiff does not expressly plead that his consent was involuntary; and (2) an alleged general knowledge of fear of police violence—even though Plaintiff does not specifically plead that that he feared such violence from Arnett—is insufficient to render Plaintiff's consent involuntary. (Doc. 24, pg. 3). The Court agrees with Arnett on both counts.

Courts use a multi-factor test to determine whether consent was voluntary. The Fifth Circuit has explained those factors in the context of a motion to suppress evidence in a criminal case:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no

incriminating evidence will be found. *United States v. Wise*, 877 F.3d 209, 221–22 (5th Cir. 2017) (citing *United States v. Williams*, 365 F.3d 399, 406–07 (5th Cir. 2004)). "Although all six factors are relevant, no single factor is dispositive." *United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993).

*United States v. Perales*, 886 F.3d 542, 546 (5th Cir. 2018). Upon careful consideration of these factors, the Court concludes—even viewing the facts alleged in the Complaint in the light most favorable to Plaintiff—Plaintiff has not alleged that his consent to the search of his person was involuntary.

First, Plaintiff was not in custody when he consented to the search of his person. Plaintiff consented to Arnett's search after Arnett called Plaintiff and Bell over to his patrol car and before Arnett handcuffed Plaintiff and ordered the two young men to relocate from next to the patrol car to the stairwell. "Voluntariness of custodial status turns on whether a reasonable person in the defendant's position would feel free to terminate the encounter." *United States v. Soriano*, 976 F.3d 450, 455 (5th Cir. 2020) (citing *United States v. Cavitt*, 550 F.3d 430, 439 (5th Cir. 2008)). As discussed above, Plaintiff was not in custody when he walked to the patrol car from the stairwell because a reasonable person in Plaintiff's situation would have felt free to terminate the encounter with Arnett. *See supra* III.A.2.i.a. Thus, this factor weighs Arnett's favor.

Second, Plaintiff does not plead any facts from which the court can infer the presence of coercive police procedures at the time Plaintiff consented to the search. At that point of the interaction, Arnett had only called the young men over to his squad car. The only potentially coercive police procedure the Court can deduce from the Complaint is Arnett's act of placing Bell in handcuffs; however, that conduct took place *after* Plaintiff had already consented to the search of his person. Plaintiff alleges that he consented to the search because he was aware of a "recent rash of high-profile police killings of unarmed African Americans that quickly escalated from minor encounters[.]" (Doc. 1, pg. 4, 10). However, Plaintiff does not allege he was fearful of

violence, nor does he allege any facts from which the Court can conclude that a reasonable person would have been fearful of violence. As Arnett correctly notes, general nervousness during an encounter with police does not render consent to a search involuntary. *See United States v. Galberth*, 846 F.2d 983, 988 (5th Cir. 1988) ("Galberth's nervousness . . . does not preclude a finding of voluntariness[.]"); *United States v. Martinez*, 410 F. App'x 759, 764 (5th Cir. 2011) (holding that "the mere presence of armed officers does not render a situation coercive" when officers were merely standing and engaging in a "relatively polite conversation"); *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988) (holding that, even though defendant was not free to leave the inspection area, consent to search was voluntary when there was no evidence that officers "employed coercion, tricks, or threats" to induce consent). Thus, the second factor weighs in Arnett's favor.

The third factor weighs in Arnett's favor as well because Plaintiff was cooperative with Arnett insofar as he voluntarily walked from the stairwell to the squad car and allowed Arnett to search his person. *See United States v. Olivarria*, 781 F. Supp. 2d 387, 395 (N.D. Miss. 2011) (defendant was cooperative with police during a roadside encounter when defendant voluntarily allowed officer to examine defendant's cell phone), *aff'd*, 495 F. App'x 512 *(5th Cir. 2012)* The fourth factor also weighs in Arnett's favor. Plaintiff does not plead any facts that—if true—would establish Plaintiff believed he did not have the right to deny consent to the search. Plaintiff does not plead that Arnett informed him that he had the right to refuse consent. However, even if Plaintiff had done so, an officer's failure to inform a suspect of their right to deny consent does not, alone, preclude a finding that consent was voluntarily given. *See Schneckloth*, 412 U.S. at 248-49 ("while the subject's knowledge of a right to refuse is a factor to be taken into account" when determining the voluntariness of consent, it is not "a prerequisite to establishing a voluntary

consent"); *Galberth*, 846 F.2d at 988 ("The district court's finding of a valid consent to be searched is not outweighed by the fact that Galberth was never told that she had the right to withhold her consent[.]").

The fifth factor also weighs in Arnett's favor. At the time of the incident, Plaintiff was a nineteen-year-old college student and Plaintiff neither alleges he was susceptible to coercion due to a lack of education, nor does Plaintiff allege he has anything other than ordinary intelligence. *See Mendenhall*, 446 U.S. at 558 (holding that a twenty-two-year-old woman who had not graduated high school could voluntarily consent to a search); *United States v. Michalik*, 5 F.4th 583, 590 (5th Cir. 2021) (education and intelligence factor weighed in favor of finding voluntary consent for forty-year-old defendant who possessed a high school education).

Finally, the sixth factor weighs in Arnett's favor. "An awareness or belief that no incriminating evidence will be found weighs in favor of a finding of voluntariness." *Soriano*, 976 F.3d at 458. Plaintiff states in his Complaint that he "knew he did not possess anything illegal and he was hoping to satisfy . . . Arnett so the encounter would end without physical harm or worse." (Doc. 1, pg. 4, ¶ 10). Moreover, after Arnett found the cylindrical tube from which he claimed a "faint odor of marijuana" was emanating, Plaintiff alleges he told Arnett that "the tube was the original package used to store a CBD cigarette" and that it was the type of CBD product that can be legally bought and sold in Texas. (Doc. 1, pg. 4, ¶ 12). Thus, the Court concludes, based on the facts alleged, Plaintiff did not believe any incriminating evidence would be found during the search of his person. As such, all six factors weigh in Arnett's favor, and the Court must conclude Plaintiff voluntarily gave his consent for Arnett to search his person.

The second prong of the valid consent analysis is whether consent was given as "an independent act of free will." *Jenson*, 462 F.3d at 406 (citation omitted). The purpose of this

inquiry is "to determine whether there was a 'break in the causal chain' between the constitutional violation and the consent; that is to say, consent cannot be the product of the illegal detention." *Id.* (citation *Santiago*, 310 F.3d at 343). As discussed above, the Court has already concluded—based on the facts alleged—Plaintiff was not detained at the time he gave his consent to search his person. *See supra* III.A.2.i.a. Thus, Plaintiff has not alleged facts from which the Court can reasonably infer Plaintiff's consent for Arnett to search him was invalid.

Finally, in response to Arnett's Motion, Plaintiff appears to argue that he has stated a claim for unreasonable search because the search of his person constituted an illegal *Terry* pat-down. (*see* Doc. 19, pg. 11) (arguing that an officer may—for the protection of himself and others—only conduct a carefully limited search of a person's outer clothing for weapons when the officer has a reasonable suspicion of criminal activity and that the person may be armed and dangerous, which Plaintiff argues Arnett lacked) (citing *Florida v. J.L.*, 529 U.S. 266, 269 (2000) (citing, in turn, *Terry*, 392 U.S. at 30)). However, Arnett's search of Plaintiff was not a *Terry* pat-down because it was consensual. *See Terry*, 392 U.S. at 7-8; *see also United States v. Jackson*, 390 F.3d 393, 399 (5th Cir.2004), *vacated on other grounds*, 544 U.S. 917 (2005) (concluding that an initially consensual encounter did not become a *Terry* stop until the officer patted down the defendant *without* consent); *United States v. Berry*, 25 F. Supp. 3d 931, 944 (N.D. Tex. 2014) ("*Unless a pat-down is consensual*, before it can be conducted, a police officer must have reasonable suspicion that criminal activity may be afoot.") (emphasis added) (citing *Terry*, 392 U.S. at 7-8; *Jackson*, 390 F.3d at 399).

In sum, the Court concludes Plaintiff has not plausibly alleged that Arnett's search of his person was unreasonable and thus violative of Plaintiff's Fourth Amendment rights. Thus, the

Court grants Arnett's motion to dismiss as it relates to Plaintiff's claims regarding an unreasonable search of Plaintiff's person.

###### (2)   Search of Plaintiff's Dormitory Room

Next, the Court considers whether Plaintiff has adequately alleged that Arnett's warrantless, non-consensual search of Plaintiff's dormitory room violated the Fourth Amendment. The Court concludes that Plaintiff has. "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972). "It is 'a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). However, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Stuart*, 547 U.S. at 403 (citing *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (per curiam); *Katz v. United States*, 389 U.S. 347, 357 (1967)). The Fifth Circuit has explained that "a student who occupies a college dormitory room enjoys the protections of the Fourth Amendment." *Piazzola v. Watkins*, 442 F.2d 274, 289 (5th Cir. 1971).

It is undisputed that Arnett searched Plaintiff's dormitory room without a warrant. However, Arnett argues that his warrantless search of the dormitory did not violate Plaintiff's Fourth Amendment rights because Arnett expressly informed Plaintiff that any contraband or evidence of a crime that might be obtained during the search of Plaintiff's dormitory would not be used in any subsequent criminal prosecution of Plaintiff. (Doc. 12, pg. 19). Arnett argues that because the subsequent criminal prosecution of Plaintiff did not involve anything discovered during the warrantless search, Plaintiff cannot state a claim under § 1983 for a Fourth Amendment violation based on the search of Plaintiff's dorm. (Doc. 12, pg. 19).

---

Arnett relies on the Fifth Circuit's decision in *Piazzola*. 442 F.2d 274 (5th Cir. 1971). Arnett argues that *Piazzola* stands for the proposition that universities have "broad supervisory powers" over campus dormitories, which—Arnett claims—empowers university officials to conduct warrantless searches of dormitories without complying with the Fourth Amendment warrant requirement so long as the searches are not conducted for the "primary purpose of a criminal prosecution." (Doc. 12, pg. 12) (citing *Piazzola*, 442 F.2d at 289). Reviewing the Fifth Circuit's reasoning in *Piazzola*, as well as cases from other courts considering the constitutionality of warrantless dormitory searches, the Court is unconvinced that Arnett can escape the Fourth Amendment's requirements by informing Plaintiff that evidence potentially gathered from the search of Plaintiff's dormitory would not be used in any subsequent criminal prosecution of Plaintiff.

In *Piazzola*, two Troy State University students were convicted of possession of marijuana and sentenced to prison after police searched their dormitories without a warrant after the fruits of those searches were used in subsequent criminal prosecutions of the students. *Piazzola*, 442 F.2d at 285-86. The searches in *Piazzola* were pursuant to university regulations empowering the university to: (1) enter dormitory rooms for inspection purposes; and (2) search dormitories and students' personal effects if the administration deemed such a search necessary. *Id.* at 286. The Fifth Circuit affirmed the district court's granting habeas corpus relief and the district court's ordering the release of the prisoners after holding the dormitory searches violated the Fourth Amendment. *Id.* at 289. The Fifth Circuit explained:

> [T]he University retains broad supervisory powers *which permit it to adopt the regulation heretofore quoted*, provided that regulation is reasonably construed and is limited in application to further the University's function as an educational institution. The regulation *cannot be construed or applied so as to give consent to a search for evidence for the primary purpose of a criminal prosecution*. Otherwise, *the regulation itself would constitute an unconstitutional attempt to require a*

> *student to waive his protection from unreasonable search and seizure as a*
> *condition to his occupancy of a college dorm.*

*Id.* (emphases added). In other words, *Piazzola* indicates the following: (1) college dormitory residents retain Fourth Amendment protections over their domiciles; (2) college policies and regulations that allow college personnel to search students' dormitory rooms constitute the students' consent to such searches; and (3) such consent is only valid if: (a) the searches are tied to the institution's educational purpose; (b) the dormitory residents are aware of the regulations; and (c) the searches are not conducted primarily for the purposes of criminal prosecution. *See id.*

The pleadings before the Court contain no Navarro College policy or regulation allowing College personnel to conduct warrantless searches of the students' dormitory rooms. The Complaint contains no reference to any such policy and neither Arnett nor the College has provided the Court with evidence of any such policy as an attachment to their respective motions to dismiss.[6] Nevertheless, Arnett argues that his warrantless search of Plaintiff's dormitory without Plaintiff's consent did not violate the Fourth Amendment merely because he told Plaintiff any evidence gathered would not be used in any subsequent criminal prosecution.

The Fifth Circuit has not revisited the question of warrantless dormitory searches since its decision in *Piazzola*. Arnett has not identified, nor can the Court find, any case standing for the proposition that—in the absence of regulations authorizing dormitory searches—university personnel may escape the requirements of the Fourth Amendment and perform warrantless searches of students' dormitories without a warrant by merely informing students stating that any evidence found will not be used in any subsequent criminal prosecution of the students. Every

---

[6] The Court notes here that its review of a Rule 12(b)(6) motions is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.)*, 594 F.3d at 387. Thus, had the Complaint referenced any such policy and Arnett or the College attached evidence of such policy to their respective motions, the Court could properly consider the policy without converting the motions to dismiss into motions for summary judgment.

pertinent case the Court found addressing warrantless dormitory searches involves, at the very least, regulations empowering such searches. *See, e.g.*, *Medlock v. Trustees of Indiana University,* 738 F.3d 867 (7th Cir. 2013) (holding that: (1) plaintiff consented to warrantless search by resident advisors inspecting for health and safety violations when plaintiff agreed to the university's housing policy; and (2) the subsequent search by police officers was supported by a warrant that was issued after the Court found probable cause once the university's resident advisors informed officer they saw marijuana in plaintiff's dorm room); *Wagner v. Holtzapple,* 101 F. Supp. 3d 462 (M.D. Pa. 2015) (holding that university students consented in advance to dormitory searches by agreeing to university housing policy handbook, but that students sufficiently alleged that university defendants did not comply with contents of the university's handbook when conducting the dormitory search at issue); *Morale v. Grigel*, 422 F. Supp. 988 (D. N.H. 1976) (holding that college personnel could perform administrative searches of dormitories for health and safety violations pursuant to college policy because such regulations were tied to educational purpose but intrusive searches for stolen property violated the Fourth Amendment even though evidence obtained was only used in internal disciplinary proceedings and not in any subsequent criminal prosecution of students); *Smyth v. Lubbers*, 398 F. Supp. 777 (W.D. Mich. 1975) (holding that the dormitory housing contract to which plaintiff agreed allowed college personnel to enter dormitories when, inter alia, they have "reasonable cause to believe students are continuing to violate federal, state, or local laws or College regulations" was unconstitutional even though evidence obtained was only used for internal disciplinary purposes because college personnel were searching specifically for evidence plaintiff was violating the law); *Devers v. Southern University*, 97-0259 (La. App. 1 Cir. 4/8/29); 712 So.2d 199, 204-07 (holding that university policy allowing police to conduct random sweeps of students' dormitories was unconstitutional because it was not

tied to university's educational purpose). Each of these cases analyzed the issue of warrantless dormitory searches pursuant to a university or college's housing policy as turning on consent—that is, courts consider a student's agreement to dormitory policies allowing university or college personnel to conduct searches of their dormitory as advanced consent to such searches.

Without a Navarro College policy allowing campus personnel to search College dormitory rooms, and without any indication that Plaintiff was aware of such policy, the Court cannot conclude Plaintiff gave advanced consent to a warrantless search of Plaintiff's dormitory room.[7] Moreover, the Court has found no basis for concluding that Arnett's act of informing Plaintiff that any evidence gathered from the warrantless search of Plaintiff's dormitory would not be used in any subsequent criminal prosecution of Plaintiff makes Arnett's search of Plaintiff's dormitory room lawful.[8] As such, the Court must conclude that Plaintiff has adequately alleged Arnett

---

[7] The Court notes, however, that the mere existence of a policy allowing for warrantless searches of the College's dormitory rooms may not, on its own, overcome Plaintiff's Fourth Amendment right to privacy in his dormitory. In *Devers v. Southern University*, the First Circuit Court of Appeals of Louisiana explained that, in the context of eliminating weapons and drugs from the educational environment:

> [L]aw enforcement agencies do not have the authority to sweep entire residential areas without a warrant. This is the very essence of the Fourth Amendment protection.
> . . . .
> We agree with the court in *Morale v. Grigel,* 422 F. Supp. 988, that a check of a student's dormitory room is unreasonable under the Fourth Amendment unless Southern University can show that the search furthers its functioning as an educational institution. Southern University's housing regulation, as written, clearly authorizes unconstitutional searches. The search must further an interest that is separate and distinct from that served by Louisiana's criminal laws. *See Morale v. Grigel,* 422 F. Supp. at 998.
>
> We reject Southern University's argument that by agreeing to the provisions of the housing contract, students consent to the dormitory sweeps. The state, in operating a public school system of higher education, cannot condition attendance at one of its schools on the student's renunciation of his constitutional rights. *Robinson v. Board of Regents of Eastern Kentucky University,* 475 F.2d 707, 709 (6th Cir. 1973).

*Devers,* 712 So.2d at 206-07.

[8] Criminal prosecution notwithstanding, Arnett informed Plaintiff that results of the dormitory search "could be used against them in a college administrative punishment proceeding." Here, there is nothing in the pleadings that would support an administrative search of the dormitory beyond a general desire to eliminate drugs from the educational environment as discussed in *Devers. See Devers,* 712 So. 2d at 206–07. In other words, nothing in the pleadings supports reasonable suspicion or an administrative search of the dormitory for either (1) evidence of a possession crime or (2) drugs in the educational environment.

---

violated Plaintiff's Fourth Amendment right to be free from unreasonable searches based on Arnett's search of Plaintiff's dormitory room without either a search warrant or Plaintiff's consent.

### (b)      Whether a Violation of Clearly Established Law Occurred

Having determined Plaintiff has adequately pled his unreasonable search, the Court must next determine whether Arnett's conduct—as alleged in Plaintiff's Complaint—violated a constitutional right that was clearly established at the time of the incident at issue. *Saucier*, 533 U.S. at 200-01. As discussed at length above, the Fifth Circuit has explained that "a student who occupies a college dormitory room enjoys the protections of the Fourth Amendment." *Piazzola*, 442 F.2d at 289.

Plaintiff alleges Arnett "acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's clearly established constitutional rights," including Plaintiff's right to be free from unreasonable searches. (Doc. 1, pgs. 7-8, ¶ 25-27). Based on the facts alleged in the Complaint, the Court concludes Plaintiff has pled facts with sufficient specificity to "defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. At the time Arnett searched Plaintiff's dormitory without either a search warrant or without Plaintiff's consent, no reasonable officer could have concluded Plaintiff was not entitled Fourth Amendment protection as a dormitory resident. *See Piazzola*, 442 F.2d at 289. Accordingly, Plaintiff has pled sufficient facts allowing the Court to draw the reasonable inference not only that Arnett is liable for the conduct alleged but also that Plaintiff can defeat Arnett's defense of qualified immunity if such facts are true. *See Backe*, 691 F.3d at 648. As such, Arnett's Motion to Dismiss Plaintiff's Original Complaint, (Doc. 12), is **DENIED IN PART** with respect to Plaintiff's 42 U.S.C. § 1983 claim that Arnett violated Plaintiff's Fourth Amendment right to be free from unreasonable searches based on the search of Plaintiff's dormitory room.

---

MEMORANDUM OPINION AND ORDER                                          Page **33** of 47

**B.      Defendant Navarro College's Motion to Dismiss is Granted**

For the reasons discussed below, the Court grants the College's Motion. (Doc. 13). Specifically, the Court grants the motion with respect to Plaintiff's state-law claim against the College and dismisses this claim with prejudice. The Court grants Plaintiff's § 1983 claim against the College and dismisses this claim without prejudice.

*1.      State-Law Claims*

In the Complaint, Plaintiff asserted a state-law claim for malicious prosecution against the College. (*See* Doc. 1, pg. 8, ¶ 29). The College moved to dismiss this claim under the TTCA. (*see* Doc. 13, pgs. 32-34). In his response, Plaintiff affirmatively abandoned the claim. (Doc. 20, pg. 20) ("Plaintiff does not intend to pursue his state-law claims against Defendant Navarro College."). Because Plaintiff has affirmatively abandoned his state-law claims against the College, the Court grants the College's Motion with respect to that state-law claim and dismisses it with prejudice. *Terry Black's Barbecue*, 22 F.4th at 459; *Kovac*, 363 F. Supp. 3d at 747.

*2.      Section 1983 Claims*

The Court now turns to Plaintiff's claim under 42 U.S.C. § 1983 against the College. As noted above, to state a claim under § 1983, Plaintiffs must allege: (1) "some person has deprived him of a federal right" guaranteed by the United States Constitution or federal law; and (2) "the person who deprived him of that right acted under color of state or territorial law." *Gomez*, 446 U.S. at 640 (1980). The existence of a constitutional violation is a "threshold" requirement in any claim § 1983 claim. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). "[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability[.]" *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) (emphasis in original).

---

The Supreme Court has explained that a governmental entity—such as a public community college—may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature *caused* the constitutional tort." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis added). While governmental entities "can be sued directly under § 1983, *Monell* establishes that they 'cannot be found liable on a theory of vicarious liability or respondeat superior.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing, in turn, *Monell*, 436 U.S. at 690-91))). "In other words, 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated actions by municipal employees will almost never trigger liability." *Id*. (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001)). Thus, to assert claim for liability under *Monell*, a plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847 (citing *Piotrowski*, 237 F.3d at 578)).

Plaintiff alleges the College violated his Fourth and Fourteenth Amendment rights by using excessive force. (Doc. 1, pg. 7, ¶ 25). Plaintiff also alleges he was unconstitutionally "detained, interrogated, searched, assaulted, . . . and maliciously and baselessly prosecuted." (Doc. 1, pgs. 7-8, ¶ 25). Plaintiff alleges the College's "policies and/or customs" violated Plaintiff's clearly established rights under the United States Constitution. (Doc. 1, pg. 7, ¶ 25). The Complaint makes the following allegations relating to the College's policies and customs:

> The exercise of established custom of and/or policy by Defendant Navarro College violated Plaintiff's clearly established rights under the U.S. Constitution against the racial profiling, unlawful detention, illegal search and interrogation, baseless criminal prosecution, and physical assault against him. (Doc. 1, pg. 7, ¶ 22).

> At all times Defendants Arnett and Navarro College were acting under the color of the laws and regulations of the State of Texas. Defendant Navarro College had a

policy and/or custom in place that enabled its agents and employees to act with indifference to the constitutional rights of individuals. Such policies and/or customs included tolerating misconduct by police officers and encouraging misconduct by failing to adequately supervise, discipline, or train such officers. Such policies and/or customs include the use of excessive force, false arrests and fictious charges, retaliation against citizens who complain of improper police conduct, racial profiling, discrimination based on race and abuse of proper police and prosecutorial standards.

(Doc. 1, pg. 7, ¶¶ 22-23). Thus, Plaintiff bases his *Monell* claim against the College on theories of: (1) policy liability; (2) failure to train or supervise; and (3) ratification. While Plaintiff "need not provide proof of [these] allegations at this stage, he must still plead facts that plausibly support" each element of a *Monell* claim under any of these theories. *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). For the reasons discussed below, Plaintiff's Complaint fails to do so and, as such, the Court concludes Plaintiff's 42 U.S.C.§ 1983 claim against the College must be dismissed.

       (i)    <u>Constitutional Violations</u>

Plaintiff's Complaint asserts four constitutional claims: (1) excessive force; (2) malicious prosecution; (3) unreasonable seizure by way of illegal detention; and (4) unreasonable search. (Doc. 1, pgs. 7-8, ¶¶ 25-26). Additionally, the Complaint makes vague reference to a retaliation claim under the First Amendment and an equal protection claim under the Fourteenth Amendment. (*see* Doc. 1, pg. 7, ¶ 23).

As with the excessive force claim against Arnett, Plaintiff has affirmatively abandoned his excessive force against the College. (Doc. 20, pg. 10) ("Plaintiff does not intend to pursue his claim for excessive force against Defendant Navarro College). Plaintiff has also abandoned his malicious prosecution claim and his Fourteenth Amendment equal protection claim—to the extent he attempted to assert it—against the College by virtue of his failure to respond to the College's arguments as to those claims in its motion to dismiss. *See In re Dallas Roadster*, *Ltd.*, 846 F.3d at

126; *Black*, 461 F.3d at 588 n.1. Finally, aside from Plaintiff's vague reference to a policy of "retaliation against citizens who complain of improper police conduct," Plaintiff makes no factual allegations whatsoever to supporting any potential First Amendment retaliation claim. Thus, Plaintiff's *Monell* claim against the College cannot be predicated on a claim of excessive force, malicious prosecution, equal protection, or retaliation. *See Peterson*, 588 F.3d at 844; *Becerra*, 105 F.3d at 1047.

As detailed above, the Court concludes Plaintiff has plausibly alleged Arnett violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. *See supra* Section III.A.2(i)-(ii). Thus, these claims *could potentially* underpin a § 1983 claim against the College. However, for the reasons discussed below, the Court concludes Plaintiff has failed to state a § 1983 claim against the College because the Compliant does not plead facts which—if true— would establish that such violations were the result of: (1) an unconstitutional policy or custom; (2) a constitutionally inadequate policy for the training or supervision of Navarro College Department of Public Safety ("NCDPS") officers; or (3) the College's ratification of unconstitutional practices.

(ii)     Plaintiff's Policy Liability Theory

Plaintiff has failed to state a § 1983 claim against the College under a theory of policy liability. The Fifth Circuit has explained that, for the purposes of § 1983, an official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [governmental entity's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [the entity's] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [entity] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees do not render

---

MEMORANDUM OPINION AND ORDER                                      Page **37** of 47

the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (en banc). Thus, to state a claim a § 1983 against a governmental entity based on a theory of policy liability, a plaintiff must plead sufficient facts that—if true—establish that the "challenged policy [or custom] was promulgated or ratified" by the governmental entity's final policymaker. *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016).

Pleadings asserting a policy liability claim under § 1983 are sufficient "when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" behind the alleged constitutional violation. *Balle v. Nueces County*, 962 F.3d 552, 559 (5th Cir. 2017) (citation omitted). To survive a motion to dismiss, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997) (citations omitted). An action asserting municipal policy liability under § 1983 cannot "proceed past the pleadings stage" if the complaint does not meet the requirements set forth in *Spiller*. *Peña*, 879 F.3d at 622 (citing *Spiller*, 130 F.3d at 167). Here, Plaintiff has neither identified a "policy statement, ordinance, regulation, or decision" of the College nor a "persistent, widespread practice" that is so pervasive at the College "as to as to constitute a custom that fairly represents [official] policy" and therefore fails to state a § 1983 claim against the College. *Webster*, 735 F.3d at 841.

As an initial matter, the Complaint does not make any factual allegations regarding a written policy statement, ordinance, or decision regarding the search and seizure of College students that is allegedly unconstitutional. As such, to state a § 1983 claim against the College under a theory of policy liability for the constitutional violations Plaintiff has plausibly alleged,

the Complaint must contain facts that—if true—establish "'a persistent, widespread practice of [College] officials or employees which, although not authorized is so common and well-established as to fairly represent [College] policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 841).

Just as merely alleging, in a conclusory manner, that official written policy exists will not do, "[t]he description of . . . custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller*, 130 F.3d at 167. "Actual or constructive knowledge of such a custom" must be attributable to the final policymaker of a governmental entity or to "an official to whom that [policymaker] has delegated policy-making authority" *Webster*, 735 F.2d at 841. Plaintiff neither pleads specific facts describing a widespread, persistent practice of unconstitutional searches and seizures nor any facts whatsoever establishing that College policymakers had any knowledge—either actual or constructive—of those supposed customs.

Aside from Plaintiff's conclusory allegations—excerpted above—that the College has a policy and/or custom of unlawful detentions and illegal searches, the only specific facts in the Complaint relating to unreasonable searches and seizures are those describing Arnett's detention of Plaintiff and search of Plaintiff's person and dormitory room. In *Peña v. City of Rio Grande City*, the Fifth Circuit explained that:

> [To plausibly] plead a practice "so persistent and widespread as to practically have the force of law," [*Connick v. Thompson*, 563 U.S. 51, 61 (2011)], a plaintiff must do more than describe the incident that gave rise to his injury. In *Spiller*, 130 F.3d at 167, we rejected, as "vague and conclusory," a claim by a black motorist, arrested without probable cause, that his arrest resulted from the police department's general policy of "disregard[ing] ... the rights of African American citizens" and of "engag[ing] [African Americans] without regard to probable cause to arrest." Though Peña characterizes the relevant policy with greater particularity, her allegations are equally conclusional and utterly devoid of "factual enhancements."

*Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Peña* 879 F.3d at 622 (first and second alterations added). As in *Spiller* and *Peña*, Plaintiff does not plead any specific facts describing an allegedly unconstitutional custom or practice other than the facts of the interaction between Plaintiff and Arnett on March 28, 2020. The Complaint contains no facts *whatsoever* relating to any other instances of allegedly unconstitutional searches and seizures by College officials or employees. While Plaintiff alleges that Arnett has a "history of targeting and harassing African[-]American male students at Navarro College for accusations, arrests, searches, and/or detentions," Plaintiff's conclusory allegation—without any factual support—is insufficient to establish the existence of a custom or practice of unreasonable searches and seizures. *Compare Spiller*, 130 F.3d at 167 (vague and conclusory allegation about police department targeting African-Americans and disregarding their rights was insufficient to plead a custom or practice) *with Harvey v. Montgomery County*, 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (allegations describing several specific incidents of excessive force and asserting that there had been hundreds of complaints against the police department for excessive force and unlawful detentions in a ten-year span were sufficient to plead a custom or practice).  As the Fifth Circuit explained in *Webster*:

> If actions of [governmental] employees are to be used to prove a custom for which the [governmental entity] is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, and accepted, practice of [government] employees."

*Webster*, 735, F.2d at 842. Plaintiff's facts, as alleged in his Complaint, describing the encounter between Plaintiff and Arnett at issue in this case does not suffice to identify a "persistent, widespread practice" that is "so common and well settled as to constitution a custom that fairly represents [College] policy." *Piotrowski*, 237 F.3d at 579 (citations omitted).

---

Courts in this circuit have routinely dismissed *Monell* policy liability claims based on the failure to identify a pattern of unconstitutional behavior similar to the incident giving rise to the claim. *See, e.g.*, *Peña*, 879 F.3d at 623 (affirming dismissal of pleadings that failed to identify a pattern of tasing non-suspect minors); *Spiller*, 130 F.3d at 167 (affirming dismissal of pleading that failed to identify a pattern of unlawful arrests); *Self v. City of Mansfield*, 369 F. Supp. 3d 684, 702-03 (N.D. Tex. 2019) (dismissing complaint that, *inter alia*, failed to plausibly allege a "pattern of repeated constitutional violations" or "persistent, repeated, and constant violations rights by virtue of [an] alleged failure to train"); *Harvey*, 881 F. Supp. 2d at 798 (dismissing First Amendment claims for failure to allege a pattern of similar violations); *Monacelli v. City of Dallas*, No. 3:21-cv-2640-L, 2022 WL 4668054, *6-8 (N.D. Tex. Sep. 30, 2022) (dismissing complaint after finding, *inter alia*, no alleged pattern of police officers using excessive force against peaceful protestors and journalists aside from two incidents, separated by two years); *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'") (quoting *Piotrowski*, 237 F.3d at 582). Like the courts in those cases, the Court concludes Plaintiff's Complaint does not plausibly allege a custom or practice of constitutional violations because Plaintiff does not plead any facts beyond the incident giving rise to this suit.

Plaintiff's Complaint also fails § 1983's "policymaker prong." As the Fifth Circuit explained in *Peña*:

> In *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016), we clarified that, because the identity of the policymaker is a legal question, courts should not "grant motions to dismiss for failing to plead [a] specific identity." Rather, "the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Id.* at 284. The plaintiff in *Groden* carried his burden of connecting the policy to the city council

by alleging that the city "publicly announced" the policy and that its "spokesman" gave "media interviews describing the new policy." *Id.* at 286.

A city cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" is attributable to a city policymaker. [*Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017)]. Peña's complaint invites no more than speculation that any particular policymaker, be it the chief of police or the city commission, knew about the alleged custom. Without more, her allegation fails the second prong of § 1983 as well.

*Peña*, 879 F.3d at 622-23. Under Texas law, the final policymaker for a Texas community college is its board of trustees. *See generally* TEX. EDUC. CODE §§ 130.082, 130.084; *Saenz v. Dallas County Cmty. Coll. Dist.*, No. 3:10-cv-742-O, 2011 WL 1935742, at *4 *N.D. Tex. May 16, 2011). Thus, to state a § 1983 claim against the College, Plaintiff must plead facts that—if true—sufficiently connect the College's board of trustees, or an official to whom the board of trustees delegated relevant policy-making authority, to the allegedly unconstitutional practices of illegal searches and seizures by NCDPS officers for the Court to conclude that the policymakers had actual or constructive knowledge of such practices. *Webster*, 735 F.2d at 841. As with the complaint in *Peña*, Plaintiff's Complaint invites no more than mere speculation that any policymaker had knowledge—be it actual or constructive—of the alleged practices. Without more, Plaintiff's allegations fail the "policymaker" prong of § 1983. Thus, the Court must conclude Plaintiff has failed to state a § 1983 claim against the College based on a policy liability theory.

(iii)    Plaintiff's Failure to Train or Supervise Theory

The Court next turns to Plaintiff's failure to train or supervise theory. The failure to train or supervise government employees "may fairly be said to represent a policy for which [a governmental entity] is responsible, and for which [the entity] may be liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). However, a governmental entity's failure to train or supervise its employees regarding their obligation to respect constitutional rights only constitutes an "official policy" if it "amounts to deliberate indifference." *Id.* at 388;

*Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015); *Madden v. Gribbon*, No. 3:21-CV-1168-S, 2022 WL 4360558, at *5 (N.D. Tex. Sept. 20, 2022).

"Defects in the particular training [or supervision] program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). The training or supervision inadequacies must be "closely related to the [constitutional] injury" underpinning the *Monell* claim. *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002). The deliberate indifference standard is not satisfied by showing negligence or even gross negligence. Instead, it is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010). Generally, just as with establishing a custom or practice, establishing deliberate indifference "requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 390 (5th Cir. 2003) (quoting *Thompson*, 245 F.3d at 459). "Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations" that are "so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* (citation and internal quotation marks omitted).

The Court concludes Plaintiff has failed to plausibly allege a § 1983 claim against the College based on a failure to train or supervise theory for much the same reason that Plaintiff has failed to state a claim based on a policy liability theory—Plaintiff has not pled facts establishing a pattern of similar violations to support the conclusory allegations in Plaintiff's Complaint. Plaintiff only alleges that the College's "policies and/or customs included tolerating misconduct by police officer and encouraging misconduct by failing to adequately supervise, discipline, or train such officers." (Doc. 1, pg. 7, ¶ 23). This allegation is entirely conclusory and is supported neither by

any facts describing the training or supervision of NCDPS officers nor any assertion of how such training or supervision is closely related to the alleged violation of Plaintiff's Fourth Amendment rights. Thus, Plaintiff fails to state a § 1983 claim against the College under a failure to train or supervise theory.

Plaintiff also adduces no facts which, if true, would establish a pattern of alleged violations of the constitutional rights of the College's students to be free from unreasonable searches and seizures. While—in narrow circumstances—"a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights," may support a finding of deliberate indifference, that narrow exception does not apply here. *Garza v. City of Conna*, 922 F.3d 626, 637-38 (5th Cir. 2019) (internal quotations omitted); *see Little v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018) ("Without a pattern of constitutional violations, deliberate indifference can be inferred only in narrow and extreme circumstances."). The narrow "single-incident exception" is "generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624 (citing *Brown v. Bryan County*, 219 F.3d 450, 453-54, 462 (5th Cir. 2000)). However, Plaintiff makes no allegation that Arnett was not trained *whatsoever* in how not to violate students' Fourth Amendment rights. As such, the incident giving rise to this suit—the encounter between Plaintiff and Arnett—cannot form the basis for concluding that the College either consciously chose, or was deliberately indifferent to, an inadequate policy of training and supervision with respect to unreasonable searches and seizures by NCDPS officers. Accordingly, the Court must conclude Plaintiff has failed to state a facially plausible claim that the College is liable under § 1983 on a failure to train or supervise theory.

(iv)    Plaintiff's Ratification Theory

The Court next turns to Plaintiff's ratification theory. A governmental entity can be liable for a constitutional violation via ratification "[i]f the authorized policymakers approve a subordinate's decision and the basis for it[.]" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In *Peterson v. City of Fort Worth*, a case in which a police chief determined that a police officer's knee strike to a handcuffed person complied with department policy, the Fifth Circuit discussed the limits of the ratification theory. 588 F.3d at 848. There, the Fifth Circuit found— while the knee strike amounted to the use of excessive force—the chief's approval of the strike did not amount to ratification for the purposes of imposing § 1983 liability on the city because:

> [O]ur precedent has limited the theory of ratification to "extreme factual situations." *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998). Under that precedent, we cannot say that this case presents an extreme factual situation. *Compare Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985) (finding ratification in case in which officers "poured" gunfire onto a truck and killed innocent occupant), *with Snyder*, 142 F.3d at 798 (refusing to find ratification in case in which officer shot fleeing suspect in the back). Moreover, we have also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality. *See Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir.1986) (precedent "does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy"). Our precedent thus forecloses ratification liability in this case.

*Id.* Plaintiff's ratification theory fails for two reasons: (1) Plaintiff has not plead facts establishing that the College ratified either Arnett's previous allegedly unconstitutional behavior or Arnett's behavior at issue in this case; and (2) even if Plaintiff did plead facts establishing that the College ratified Arnett's behavior in this case, Arnett's behavior does not amount to the sort of "extreme factual situation" contemplated by the Fifth Circuit.

With respect to Plaintiff's allegation that the College promoted Arnett despite having knowledge of his "history of targeting and harassing African[-]American male students," Plaintiff

---

MEMORANDUM OPINION AND ORDER                                   Page **45** of 47

pleads no facts establishing any previous constitutional violations by Arnett. Moreover, even if Plaintiff's Complaint *did* include such facts, the Complaint does not include any facts establishing that any policymaker—whether the College's board of trustees or an official to whom the College's board delegated relevant policymaking authority—ever approved of unconstitutional conduct by Arnett and the basis for that conduct. Accordingly, Plaintiff's allegations regarding Arnett's alleged history of past constitutional violations cannot underpin Plaintiff's ratification theory.

Moreover, the constitutional violations that the Court has concluded Plaintiff adequately alleged in his Complaint also cannot underpin Plaintiff's ratification theory because the Complaint contains no facts regarding the College's response to Arnett's actions that are at issue here. While a policymaker's silence on unconstitutional conduct can amount to ratification, such conduct must constitute extreme "incompetence and catastrophic performance[.]" *Grandstaff*, 767 F.2d at 171. Plaintiff pleads no such facts to establish that a College policymaker ratified Arnett's conduct at issue in this case. Fifth Circuit case law makes clear the Court cannot conclude Arnett's conduct constitutes the sort of "extreme factual situation" required for the College's silence to amount to ratification. *See Peterson*, 588 F.3d at 848; *Snyder*, 142 F.3d at 798; *Grandstaff*, 767 F.2d at 161. As such, the Court must conclude Plaintiff has failed to state a § 1983 claim against the College based on a theory of ratification.

In sum, taking all non-conclusory facts as true and drawing all reasonable inferences in favor of Plaintiff, as the Court is required to do at this stage, the Court concludes the Complaint has failed to plausibly allege facts from which the Court can infer the College is liable for the constitutional violations Plaintiff has adequately alleged. Plaintiff has also failed to adequately plead: (1) the College has a policy, custom, or practice of unreasonable searches and seizures; and

(2) the College has a constitutionally inadequate training and supervision program that led to the unreasonable search and seizure violations alleged by Plaintiff; or (3) the College has ratified Arnett's allegedly unconstitutional behavior. As such, the Court must conclude Plaintiff has failed to state a facially plausible claim that the College is liable under § 1983. For these reasons, the Court grants the College's Motion, (Doc. 13), with respect to Plaintiff's § 1983 claim and dismisses that claim without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court (1) grants in part and denies in part Defendant Arnett's Motion to Dismiss Plaintiff's Original Complaint, (Doc. 12), and (2) grants Defendant Navarro College's Motion to Dismiss Plaintiff's Original Complaint, (Doc. 13). Specifically, the Court grants in part Arnett's Motion with respect to Plaintiff's state-law claims against Arnett for: (1) malicious prosecution; (2) assault and battery; (3) false imprisonment; and (4) intrusion on seclusion. These claims are hereby dismissed with prejudice. The Court denies in part Plaintiff's § 1983 claim against Arnett for the alleged violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. The Court grants the College's Motion with respect to Plaintiff's state-law claim of malicious prosecution claim against the College. This claim is dismissed with prejudice. Finally, the Court grants the College's Motion with respect to Plaintiff's § 1983 claim against the College. This claim is dismissed without prejudice.

**SO ORDERED:** May 10, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE